UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KURT E. DAVIS,

    Plaintiff,

v.                                             Case No: 8:20-cv-1067-T-36AAS

HILLSBOROUGH COUNTY and RON
DESANTIS,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court upon Plaintiff's Interim Motion to Sever from Action all Undisputed State Law Claims and Remand to State Court [Doc. 7], Defendant Hillsborough County's Response [Doc. 14], Plaintiff's Motion to Remand Case in its Entirety to State Court [Doc. 19], Defendant Governor DeSantis' Response [Doc. 21], and Defendant Hillsborough County's Response [Doc. 35]. Plaintiff presents various arguments in his motions, including that this Court lacks jurisdiction and that all parties did not timely consent to removal. The Court, having considered the motions and being duly advised in the premises, will DENY Plaintiff's Interim Motion to Sever [Doc. 7] and Motion to Remand Case in its Entirety [Doc. 19].

**I.  BACKGROUND**

As the COVID-19 pandemic struck the United States and countries around the world in March 2020, government officials across the country—including in Florida—began to declare states of emergency in efforts to mitigate the foreseeable effects of the deadly virus.[1] Shortly after,

---

[1] *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, THE WHITE HOUSE, (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak (President Trump declared a national

stay-at-home orders were put in place, social distancing was mandated, and businesses were required to abide by a number of administrative orders. The State of Florida issued Executive Order 20-51 on March 1, 2020, directing the Florida Department of Health to issue a Public Health Emergency. [Doc. 1-7 at p. 34]. A state of emergency was subsequently declared on March 9, 2020, pursuant to Executive Order 20-52. *Id.*

Around March 17, 2020, Florida Governor Ron DeSantis began to implement restrictions regarding alcohol sales and occupancy limits at restaurants and bars, under Executive Order 20-68. *Id.* at pp. 34. On March 19, 2020, the U.S. Department of Homeland Security Cybersecurity and Infrastructure Security Agency ("CISA") released a Memorandum on Identification of Essential Critical Infrastructure Workers during COVID-19 Response. *Id.* at 23–33. A day later, March 20, 2020, the Governor issued Executive Order 20-71, which further restricted alcohol sales, suspended all on-premises food consumption at restaurants, and ordered the closure of gymnasiums and fitness centers. *Id.* at pp. 34–38. That same day, the Governor issued Executive Order 20-72, which suspended all elective medical procedures. *Id.* at pp. 39–41.

On March 23, 2020, the Governor issued Executive Order 20-80, which ordered all persons entering Florida from "an area with substantial community spread," through an *airport*, to quarantine or self-isolate for the shorter of fourteen days or the duration of their stay in Florida. *Id.* at pp. 42–44. The following day, the Governor issued Executive Order 20-82, which expanded

---

emergency beginning March 1, 2020); *The State of Florida Issues Updates on COVID-19*, FLA. HEALTH (Mar. 11, 2020), http://www.floridahealth.gov/newsroom/2020/03/031120-state-florida-issues-updates-covid19.pr.html ("On March 9, Governor Ron DeSantis issued Executive Order 20-52, declaring a state of emergency for COVID-19"); *Hillsborough Emergency Policy Group Declares State of Local Emergency*, HILLSBOROUGH CO. FLA. (Mar. 12, 2020) https://www.hillsboroughcounty.org/en/media-center/press-releases/2020/03/12/hillsborough-emergency-policy-group-declares-state-of-local-emergency.

Executive Order 20-80 to include any individual traveling to Florida from "an area with substantial community spread." *Id.* at pp. 45–47. The restrictions grew as the days went by.[2] Ultimately, on April 1, 2020, the Governor issued Executive Order 20-91, which ordered all individuals to stay at home and limited movements to only essential services and activities.[3] *Id.* at pp. 56–60.

Hillsborough County began its local efforts around March 20, 2020, issuing an administrative order that applied the Governor's Executive Order 20-68 regarding restaurants and food establishments and banning all private or public gatherings of more than ten people. [Doc. 1-7 ¶ 7]. On March 27, 2020, the Hillsborough County Emergency Policy Group issued an Executive "Safer-At-Home Order" which required all residents to "stay home as much as possible twenty-four-hours a day, seven days a week," except to get food, medicine, and essentials. *Id.* at pp. 13–

---

[2] On March 27, 2020, the Governor issued Executive Order 20-86, which directed the Florida Department of Transportation to establish checkpoints at welcome centers and rest stops to enforce the travel restrictions laid out in Executive Order 20-82. [Doc. 1-7 at pp. 48–51]. That day, the Governor also issued Executive Order 20-87, which suspended vacation rental property operations, for those properties rented for a period of thirty days or less, excluding hotels, motels, and inns. *Id.* at pp. 52–55. On March 28, 2020, CISA released a revised Advisory Memorandum on Identification of Essential Critical Infrastructure Workers during COVID-19 Response, v. 2, to include a more comprehensive, but not exclusive, list of essential workers and services. *Id.* at pp. 61–75. Essential services as defined therein include, but are not limited to, "medical and healthcare, telecommunications, information technology systems, defense, food and agriculture, transportation and logistics, energy, water and wastewater, law enforcement, and public works." *Id.* at p. 61. On March 30, 2020, the Governor entered Executive Order 20-89, which "ordered Miami-Dade County, Broward County, Palm Beach County, and Monroe County to restrict public access to businesses and facilities deemed non-essential" as defined by the guidelines set forth by Miami-Dade County. *Id.* at pp. 76–78. Said guidelines are detailed in Miami-Dade County Emergency Order 07-20 and its subsequent amendments. *Id.* at pp. 79–89.

[3] Executive Order 20-91 defined "essential services" as those outlined in CISA's Memorandum on Identification of Essential Critical Infrastructure Workers during COVID-19 Response, v. 2, which included healthcare, law enforcement and public safety, food and agriculture, energy, transportation, and others. [Doc. 1-7 at pp. 59-75]. *Id.* The executive order defined "essential activities" to include attending religious services, participating in socially-distant recreational activities, taking care of pets, and "otherwise assisting a loved one or friend." *Id.* at p. 59.

3

22. However, "essential individuals, businesses, and services" including medical and healthcare personnel, first responders, food and goods providers and distributors, utility workers, and a host of others were excluded—with reference to CISA's Advisory Memorandum. *Id.* at pp. 16-19.

On March 30, 2020, Plaintiff filed an action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida against the County, alleging that its Administrative Order 20-05 and Executive "Stay-At-Home" Order violated several Florida statutes, the Constitution of the State of Florida, and the First, Fifth, and Fourteenth Amendments of the Constitution of the United States of America. [Doc. 1-6]. The Complaint included, as exhibits, the administrative and executive orders, as well as CISA's Advisory Memorandum. *Id.* at pp. 5–30. The summons was issued to Plaintiff on April 2, 2020. [Doc. 1-9 at p. 2].

On April 8, 2020, Plaintiff amended the Complaint to include the Governor. [Doc. 1-7]. In that Complaint, Plaintiff re-alleged the claim against the County and also alleged that the executive orders implemented by the Governor were unlawful and unenforceable under various Florida statutes and the Florida and federal Constitutions. *Id.* at 7. The Amended Complaint included as exhibits the various administrative and executive orders as well as CISA's two Advisory Memoranda. *Id.* at 8–91. The summons was issued to Plaintiff for service on the Governor that same day. [Doc. 1-9 at p. 2].

The original complaint was served on the County on April 10, 2020. [Doc. 1-2]. Based on the state court docket activity, there were several attempts to serve the Governor, including at his office on April 20, 2020. [Doc. 1-9 at p. 1]. Plaintiff purports to have served the Governor, through the Clerk of Court, on May 5, 2020. [Doc. 19 at p. 5 ¶ 12]. On May 8, 2020, the County removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and (c) and 28 U.S.C. § 1331. [Doc. 1 ¶ 5]. In the Notice of Removal, the County noted that the Complaint had been amended to add the

4

Governor as a party defendant. *Id.* ¶ 3. However, there was no indication that the Governor had consented to removal.

On May 13, 2020, Plaintiff filed an Interim Motion to Sever from the Action all Undisputed State Law Claims and Remand Same to State Court. [Doc. 7]. In that motion, Plaintiff claims that the "distinct and independent State and Local Claims contained in the Amended Complaint are the type of claims that must be severed and remanded to the state court under 28 U.S.C. § 1441(c)(1)(B)." *Id.* p. 3 ¶ 6. The County responded on May 27, 2020, contending that the Court has "pendent jurisdiction" over the state law claims because they "flow from the identical conduct and factual basis as his claims under the United States Constitution" and that the Court has supplemental jurisdiction under 28 U.S.C. 1367(a). [Doc. 14 p. 3].

Plaintiff subsequently moved to remand the case in its entirety on June 15, 2020, arguing that the case was brought under Chapter 86 of the Florida Statutes and the County had not established the Court's jurisdiction. [Doc. 19. at pp. 2–3]. He also argued that all defendants did not timely consent to removal and that the case should be remanded on this basis. *Id.* at pp. 6 ¶ 14. The Governor then filed a response in opposition [Doc. 21; Doc. 21-1].[4] Among other things, the Governor argued that "Plaintiff's Amended Complaint contained federal constitutional claims over which the federal district court had jurisdiction;" that the County did not err in failing to include the Governor in its Notice of Removal because the Governor had not yet been "properly served" as required by 28 U.S.C. § 1446(b)(2)(A); that the deadline for the Governor to consent was

---

[4] In its response, the County incorporated by reference the arguments raised in its Response to Interim Motion to Sever from the Action all Undisputed State Law Claims and Remand Same to State Court [Doc. 14] and the Governor's Response to the motion to remand [Doc. 21]. [Doc. 35 ¶ 3].

5

actually June 29, 2020, because service was not "perfected" until May 29, 2020;[5] and that his consent to removal was timely. [Doc. 21 pp. 3–10; Doc. 21-1]. Additionally, the Governor argued that the thirty-day deadline for consent is not a "wooden rule." *Id.* at p. 4 (*citing Stone v. Bank of N.Y. Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015)).

## II.   LEGAL STANDARD

Removal to federal court is governed by 28 U.S.C. § 1441(a), which states that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." District courts have original jurisdiction over claims which are based on diversity jurisdiction, as provided under 28 U.S.C. § 1332, and issues of federal question, as defined by 28 U.S.C. § 1331. Federal question jurisdiction, which is the basis of removal in this case, exists in "civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331. Additionally, under their supplemental jurisdiction, federal courts are allowed to hear state law claims so long as they "are so related to the claims in the action within original jurisdiction that they form part of the same case or controversy." *Id.* at § 1367. "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (*citing Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001)). Lack of subject matter jurisdiction requires remand to the state court pursuant to 28 U.S.C. § 1447(c); *see also* Fed. R. Civ. P. 12 (h)(3).

---

[5] The Governor has asked the Court to take judicial notice of a Publisher's Affidavit, filed in state court, stating that Plaintiff published a copy of the Notice in a weekly newspaper on May 8, May 15, May 22, and May 29, 2020. [Doc. 21-1 ¶¶ 3-6].

The procedure for removal is governed by 28 U.S.C. § 1446. This requires a notice of removal to be filed "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1). "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action." *Id.* at § 1146(b)(2)(A). "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons" to consent to removal. *Id.* at 1446(b)(2)(B); *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008) (holding that "each defendant, upon formal service of process, [has] thirty days to file a notice of removal pursuant to § 1446(b)."). "The failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand pursuant to § 1447(c)." *Williams v. AFC Enterprises, Inc.*, 389 F.3d 1185, 1188 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan,* 171 F.3d 1249, 1253 (11th Cir.1999)). Because removal raises significant federalism concerns, federal courts are directed to construe removal statutes strictly, and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala.*, 168 F.3d at 411.

### III.   DISCUSSION

#### a.   *Unanimity of Consent to Removal*

In the instant Motion to Remand, Plaintiff contends that all defendants have not timely consented to removal, such that the unanimity requirement of § 1446(b) has not been met. [Doc. 19 at 5–6 (citing *Bailey*, 536 F.3d at 1207)]. In particular, Plaintiff argues that the case should be remanded because the Governor did not consent to removal within thirty days of service of the amended complaint. [Doc. 19 at 6, ¶ 13]. "The unanimity rule requires that all defendants consent to and join a notice of removal in order for it to be effective." *Bailey*, 536 F.3d at 1207. In cases where multiple defendants were served on different dates, the thirty-day period

7

to petition for removal or consent to removal runs from the date on which the last defendant was served. *Id.* at 1205. The rules governing removal are usually strictly construed. *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1049 (11th Cir. 2001); *Euwema v. Osceola Cty.*, No. 6:19-CV-1760-ORL-37LRH, 2019 WL 6614322, at *4 (M.D. Fla. Dec. 5, 2019) (strictly interpreting and enforcing the unanimity requirement and remanding the case). *But see Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015) (declining to establish a "wooden rule" which would require cases to be remanded solely for a defect related to the unanimity rule); *Griffin v. Lowe's Companies, Inc.*, 2018 WL 2676580 at *3 (M.D. Fla. Jun. 5, 2018) (denying motion to remand because, "based on the Eleventh Circuit's decision in *Stone*," the defendant's opposition to the motion effectively cured the defect created by its failure to consent to removal within thirty days of service of the complaint.).

While Plaintiff contends that the Governor was served by U.S. mail on May 5, 2020, there is no indication that the Governor accepted service of process by mail. *See* Fla. R. Civ. P. 1.070(i) ("A defendant may accept service of process by mail."). As the Governor contends, service was not perfected until May 29, 2020, when Plaintiff published the last of four notices in the weekly publication La Gaceta.[6] *See* Fla. Stat. § 49.10 (1)(a) ("All notices of action, except those referred to in paragraphs (b) and (c), shall be published once during each week for 4 consecutive weeks (four publications being sufficient) in some newspaper published in the county where the court is

---

[6] This Publisher's Affidavit is filed as Document 26 on the state court docket, *Davis v. Hillsborough County, et. al.*, Case No.: 20-CA-002928, which this Court has taken judicial notice of. Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

8

located. . . .").[7] The Governor therefore had until June 29, 2020, to consent to removal pursuant to § 1446(b).[8] *See Bailey*, 536 F.3d at 1203, 1204-09. The Governor's Notice of Consent to removal was filed June 24, 2020, before the thirty-day period expired. [Doc. 21-1]. As such, the Governor's consent to the County's removal was timely.

### b. *Subject matter jurisdiction*

Plaintiff's argument that the Court lacks jurisdiction because the action was brought under Chapter 86 of the Florida Statutes is entirely without merit. Chapter 86 of the Florida Statutes provides state trial courts with jurisdiction over actions requesting a declaration of rights. *See* Fla. Stat. § 86.011 ("The circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed. No action or procedure is open to objection on the ground that a declaratory judgment is demanded. The court's declaration may be either affirmative or negative in form and effect and such declaration has the force and effect of a final judgment.").

Based upon the Court's review of the Amended Complaint, Plaintiff is seeking a declaration of rights under both state and federal law. Plaintiff alleges that the "orders issued by the Defendants in connection with COVID19 . . . are unlawful and infringe upon the constitutional rights of the Plaintiff." Doc. 1-7 ¶ 6. Specifically, Plaintiff alleges that the administrative orders

---

[7] According to Fla. Stat. § 49.011(5), service of process by publication is allowed in actions "[f]or the construction of any . . . written instrument and for a judicial declaration or enforcement of any legal or equitable right, title, claim, lien, or interest thereunder." The administrative orders at issue constitute written instruments, thereby allowing service by publication in this case. *See Instrument*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining an instrument as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate" and noting that it seems to embrace "contracts, deeds, statutes, wills, Orders in Council, orders, warrants, schemes, letters patent, rules, regulations, bye-laws").

[8] The thirtieth day, June 28, 2020, fell on a Sunday and is thus excluded from the thirty-day computation. *See* Fed. R. Civ. P. 6(a)(1)(C).

9

implemented by the County and the Governor are unlawful and unenforceable pursuant to provisions of the Florida Statutes, sections of the Constitution of the State of Florida and the Constitution of the United States of America, and Amendments to the Constitution of the United States of America. *Id.* ¶¶ 14, 16. Again, federal question jurisdiction exists in "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also McNiece v. Town of Yankeetown*, 817 F. App'x 842, 845 (11th Cir. 2020) ("Federal courts have jurisdiction to entertain actions that concern a federal question, 28 U.S.C. § 1331, like McNiece's complaint, which sought relief under the Constitution, 42 U.S.C. § 1983, and based on unlawful conduct by a federal official, *Bivens*, 403 U.S. 388, 91 S.Ct. 1999."). Undoubtedly, Plaintiff has raised a claim for relief based, in part, on the federal constitution and amendments to the federal constitution. This Court therefore has jurisdiction over such claims as permitted by § 1331.

Plaintiff implicitly acknowledged this in the interim motion to sever from the action all undisputed state law claims and remand same to state court, stating that "one of Plaintiff's claims is that the Hillsborough County Orders violate the Constitution of the United States of America" and it "may arguably trigger this Court's jurisdiction." [Doc. 7 ¶ 4]. In that motion, Plaintiff argued that the "distinct and independent State and Local Claims contained in the Amended Complaint are the type of claims that must be severed and remanded to the state court under 28 U.S.C. § 1441(c)(2)." *Id.* ¶ 6. The County correctly points out in its response that the Court has supplemental jurisdiction over those portions of Plaintiff's claims as the alleged grounds for state relief flow from the identical conduct and factual basis as his claims under the United States Constitution. [Doc. 14 at p. 3]. District courts may exercise supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (citing *United Mine Workers of*

10

*America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)); 28 U.S.C.A. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Plaintiff's claims for state relief flow from the identical conduct and factual basis as the claims under the United States Constitution and Amendments.

### IV.  CONCLUSION

Having failed to perfect service on the Governor until May 29, 2020, Plaintiff's claim of lack of consent from the Governor at the time of removal by the County on May 8, 2020, lacks merit. Because the Governor consented to removal within 30 days of being served, removal comported with the statutory requirements. Additionally, because the Amended Complaint requested a declaration of rights under the United States Constitution and Amendments to the United States Constitution, there is jurisdiction under 28 U.S.C. § 1331. Moreover, these claims arise from the same nucleus of facts as the claims requesting a declaration of rights under state law such that this Court may properly exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Interim Motion to Sever from Action all Undisputed State Law Claims and Remand to State Court [Doc. 7] is **DENIED**.

2. Plaintiff's Motion to Remand Case in its Entirety to State Court [Doc. 19] is also **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on December 1, 2020.

_Charlene Edwards Honeywell_
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any